UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CASSANDRA M. MENOKEN,<br><br>Plaintiff,<br><br>v.<br><br>DAN G. BLAIR, Acting Director, United States Office of Personnel Management,<br><br>Defendant. | Civil Action 03-01775 (HHK) |

**MEMORANDUM OPINION AND ORDER**

Cassandra M. Menoken ("Menoken"), an African American female attorney employed at the Equal Employment Opportunity Commission ("EEOC") who seeks to be a federal Administrative Law Judge ("ALJ"), brings this action against the United States Office of Personnel Management ("OPM"). Menoken alleges that OPM failed to comply with an EEOC order requiring it to stop using a particular component of the ALJ examination that discriminates against African American ALJ applicants. She also charges that OPM's design, implementation and/or administration of the ALJ application process unlawfully discriminates against African Americans and females. Menoken brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Before the court is OPM's motion to dismiss Menoken's amended complaint or, in the alternative, for summary judgment [Dkt. # 15]. Upon consideration of the motion, the opposition thereto, and the record of this case, the court concludes that OPM's motion must be denied.

## I. BACKGROUND

In April 1993 Menoken commenced the examination process that must be undertaken to become eligible for selection as a federal ALJ.[1] Dissatisfied with her final examination score, Menoken filed a number of appeals with the ALJ Ratings Appeal Panel. On May 20, 1994, she filed a formal complaint with the EEOC alleging that the 1993 ALJ selection process was designed and administered to have an unlawful disparate impact on female and African American applicants. She also alleged that OPM discriminated against her based on her race and sex, and retaliated against her based on her decision to engage in protected EEO activity.

After a hearing on the liability phase of Menoken's administrative complaint, an EEOC Administrative Judge ("AJ") issued a decision finding all but one of Menoken's claims to be without merit.[2] The claim on which Menoken prevailed involved the use of a particular benchmark as part of the ALJ application process—"partner in a large law firm." The Administrative Judge agreed with Menoken that the utilization of the aforementioned benchmark on the SQS impermissibly created a disparate impact on the basis of race. On July 29, 2001, an

---

[1] Applicants interested in becoming an ALJ must participate in an extensive and highly competitive examination process overseen by OPM. The exam consists of four parts: (1) a Supplemental Qualifications Statement ("SQS"); (2) a written demonstration; (3) a Personal Reference Inquiry ("PRI"); and (4) a panel interview. Upon completion of all parts of the exam, applicants receive a final numerical rating from 70 to 100, which is then adjusted for veteran's preference where applicable. Those applicants with a qualifying final rating are placed on the register of eligibles to be referred to agencies to be considered for appointment to vacant positions.

[2] Specifically, the AJ found: (1) the 1993 ALJ exam did not have a disparate impact on African Americans; (2) the 1993 ALJ exam did not have a disparate impact on women; (3) the Agency did not engage in reprisal or intentional discrimination against Menoken based on her race or sex; and (4) use of the benchmark on the SQS relative to working as a partner in a large law firm impermissibly created a disparate impact on the basis of race. Def's. Ex. H at 61.

Administrative Judge ordered OPM "to cease use of that benchmark until its use has been properly validated . . . or until the disparate impact disappears." Def's. Ex. I at 27. The AJ also ordered OPM to post and provide notice to agencies of the discriminatory benchmark and his order. *See id.* On August 8, 2001, OPM issued a final order stating that it would fully implement the Administrative Judge's decision. On August 23, 2001, Menoken filed an appeal with the EEOC, alleging that OPM failed to comply with the AJ's order, and later, on September 6, 2001, filed another appeal challenging the AJ's decisions on her other claims. The EEOC issued a combined decision on May 16, 2003, affirming OPM's final agency decision and rejecting Menoken's compliance challenge. Menoken filed a request for reconsideration of the EEOC's decision on June 23, 2003, which was still pending when she filed this action.

## II. ANALYSIS

Menoken's amended complaint sets forth three causes of action. First, she alleges that OPM failed to comply with the AJ's order for it to "'cease' and correct discrimination against African American ALJ applicants." Am. Compl. at 11. Second, she asserts that the SQS and PRI components of the ALJ examination unlawfully discriminate against, and have an unlawful disparate impact on, African Americans in general and on her in particular. *Id.* Third, she charges that the geographic preference form used to identify where those individuals on the ALJ register are willing to work has an unlawful disparate impact on women in general and on her in particular. *Id.*

OPM moves to dismiss Menoken's amended complaint on the grounds that it improperly seeks to assert claims not addressed at the administrative level, that it fails to meet the pre-conditions for an "enforcement" action, that the complaint is untimely, and finally, that the

amended complaint improperly seeks limited or fragmented review of her claims.[3] The court will address OPM's arguments in turn.

A. *Failure to Raise Claims at the Administrative Level*

OPM asserts that plaintiff's complaint must be dismissed because it includes allegations not raised in plaintiff's administrative charge, and accordingly, this court lacks jurisdiction to adjudicate Menoken's claims because she has failed to exhaust her administrative remedies. *See Herron v. Veneman*, 305 F. Supp. 2d 64, 71 (D.D.C. 2004) ("A court can exercise jurisdiction over only those claims contained in a plaintiff's administrative complaint . . . .").

Under the EEOC's regulations, an aggrieved employee must contact an EEO counselor within 45 days of the alleged discriminatory act or the effective date of the action. 29 C.F.R. § 1614.105(a)(1). If the matter is not resolved through the informal counseling process, then the

---

[3] OPM moves to dismiss for failure to state a claim, or in the alternative summary judgment. On a Rule 12(b)(6) motion to dismiss, if either party submits matters outside the pleadings that are not excluded by the court, the court shall treat the motion as one for summary judgment. Fed. R. Civ. P. 12(b); *Polk v. Dist. of Columbia*, 121 F. Supp. 2d 56, 60 (D.D.C. 2000); *see also* 5A Charles Wright & Arthur Miller, Federal Practice and Procedure 2d § 1366 (2d ed. 1990). Because both parties submitted matters outside the pleadings, the court treats defendant's motion as one for summary judgment.

Under Rule 56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a summary judgment motion, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The non-movant's opposition must consist of more than unsupported allegations or denials—it must be supported by affidavits or other competent evidence setting forth specific facts identifying a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the evidence is "merely colorable" or "not significantly probative" summary judgment may be granted. *Anderson*, 477 U.S. at 249–50.

aggrieved employee must file a written complaint with the agency that allegedly discriminated against her within 15 days of receiving the notice of the right to file a discrimination complaint provided for in 29 C.F.R. § 1614.105(d), (e), or (f).  29 C.F.R. § 1614.106(a)–(c).  This administrative charge requirement is not intended to impose a "heavy technical burden" on complainants, but rather is meant to provide employers with notice of the claims and narrow the issues.  *See, e.g., Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995).

In order to address these notification-related concerns, a Title VII suit following an EEO complaint is limited to those claims contained in a plaintiff's administrative complaint, or claims "like or reasonably related to the allegations of the charge and growing out of such allegations." *Id., see also Caldwell v. Servicemaster Corp.*, 966 F. Supp. 33, 49 (D.D.C. 1997).  Here, defendant maintains that plaintiff failed to raise in her administrative complaint any claims related to the "ALJ referral process" and the PRI component of the ALJ examination.

An agency-defendant has the burden to prove by a preponderance of the evidence plaintiff's failure to exhaust administrative remedies.  *Bowden v. U.S.*, 106 F.3d 433, 437 (D.C. Cir 1997) ("Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it."); *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (same).  Here, defendant has failed to meet this burden.[4]

---

[4] As a preliminary matter, the court notes that Menoken's initial administrative complaint was not included in either parties' submission.  Given this omission, the court is forced to extrapolate the contents of the administrative charge from the opinions and briefs filed during the administrative process.

1. *THE ALJ REFERRAL PROCESS*

With respect to the "ALJ referral process," there is ample evidence in the record that Menoken raised this claim during the administrative process. Indeed, Administrative Judge Ira. F. Jaffe's November 9, 2000 opinion clearly states that "Complainant asserts that the geographic preference designation, coupled with the two declination and removal policy, constitutes unlawful discrimination based on sex."[5] Def's. Ex. H at 8.

2. *THE PRI*

Turning next to the allegations concerning the PRI component of the ALJ examination, the court is presented with a more difficult question. Menoken's administrative complaint addressed two "benchmarks" used in scoring the "organizational skills" component of the SQS portion of the ALJ examination—"service as a sitting judge," and "partnership status at a large (200 member) law firm." Def's. Ex. H at 49–50. AJ Jaffe concluded that the "partnership status at a large (200 member) law firm" benchmark did, in fact, result in a disparate impact for African Americans. *Id.* at 53. In addition, he ordered that the use of that benchmark be "discontinued unless and until its use has been properly validated or until the adverse impact on Blacks associated with that benchmark disappears." Def's. Ex. I at 27.

In her complaint here, Menoken alleges that this same benchmark is also used in the PRI portion of the ALJ examination. *See* Am. Compl. ¶ 73–74. While the parties agree that the PRI is

---

[5] After administering the ALJ exam, OPM maintains a register of applicants ordered by the applicant's final exam score. When an agency has an ALJ vacancy, OPM provides a "certificate" of at least three candidates from the register. As part of this referral process, ALJ applicants are asked to submit a geographic preference form indicating where an applicant is willing to relocate. In addition, it is OPM's policy to remove from its ALJ register applicants who twice decline offers of employment.

a process whereby applicants are evaluated by individuals familiar with their professional accomplishments,[6] Menoken insists that the PRI evaluation also makes use of the prohibited benchmark.  *See* Def's Ex. R at 7, Pl's. Opp. at 11.  In her brief in support of her appeal from AJ Jaffe's order, Menoken cites the SQS Self Rating Form, the PRI Rating Form, and the Rating Guide, alleging that the 1993 PRI rating sheet directed PRI evaluators to use the same benchmarks used to score the SQS—among them, "partner in a large law firm."[7]  OPM fails to identify any part of AJ Jaffe's opinion, nor any other part of the record for that matter, that controverts Menoken's account of how benchmarks affect one's score on the PRI portion of the ALJ exam.

As stated above, a Title VII plaintiff is permitted to raise before this court all claims "like or reasonably related to" the charges in her administrative complaint.  *Park*, 71 F.3d at 907 (citing *Cheek v. W. & S. Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir. 1994).  The Seventh Circuit clarified this requirement by explaining that to be reasonably related, an "EEOC charge and the complaint must, at a minimum, describe the *same conduct* . . . ."  *Kersting v. Wal-Mart Stores*, 250 F.3d 1109, 1118 (7th Cir. 2001).  The court is satisfied that Menoken has met this requirement.

Menoken is challenging the use of a single benchmark—"partner in a law firm"—whether it is used in the SQS or PRI portions of the ALJ exam.  It is one benchmark that plaintiff believes

---

[6] OPM characterizes the PRI as "basically a reference check in which persons identified by the applicant are asked to complete a reference form." Def's. Mot. at 22–23.

[7] OPM relies on language in AJ Jaffe's opinion to support its position that the PRI was not addressed during the administrative proceedings: "No challenge to the PRI rating was made [in the liability phase] by [plaintiff] and no appeal of that rating was made at any time to OALJ." Def's. Mot. at 21 (citing Def. Ex. H at 43).  This statement, however, occurs during a discussion of the repeated re-grading of plaintiff's ALJ examination that took place between 1993 and 1996. Def's. Ex. H at 40.  AJ Jaffe was not discussing the "significance of the different scores," but only outlining "the changes to Complaint's [sic] scores over time." *Id.* at 40.  Unlike the other portions of her ALJ exam, the PRI component was never re-graded.

has caused her injury by its implementation in two components of the ALJ examination. Accordingly, plaintiff's claim with respect to the PRI is properly before the court. *See Jones v. Billington*, 12 F. Supp. 2d 1, 7 (D.D.C. 1997) (allowing plaintiff to bring hostile work environment claim not formally alleged in administrative complaint where claim was "not based on conduct that [was] different from that alleged in the EEOC charge"); *Bell v. Gonzales*, 2005 WL 691865, at *4 (D.D.C. Mar. 25, 2005) (finding plaintiff's hostile work environment claim permissible where it was based on "substantially the same conduct discussed with [an] EEO counselor and alleged in his EEO administrative complaint."), *but cf. Mason v. Henderson*, 2003 WL 22433765, at *1 (D.C. Cir. Oct. 27, 2003) ("Mere references, in reports summarizing appellant's administrative challenges to his removal and suspension, to his desire to work for new management and an unfulfilled request for a light cannot reasonably be read as raising hostile work environment and failure to accommodate claims."); *Caldwell v. Servicemaster Corp.*, 966 F. Supp. 33, 49 (D.D.C. 1997) (holding that plaintiffs' sex discrimination claims were not "reasonably related" to an administrative complaint comprised only of race discrimination allegations).

B.  *Failure to Comply With the Requirements of an "Enforcement" Action*

      The court next addresses OPM's arguments that Menoken failed to comply with the requirements for the prosecution of an "enforcement" action.

      Title VII permits federal employees to litigate their agency discrimination cases in federal court on two occasions: to enforce final agency actions that conclude that an act of discrimination has occurred, and to challenge final agency determinations with which the employee does not agree. Cases clearly distinguish between these situations, as the designation of a suit as an

"enforcement" action dictates compliance with one set of procedural hurdles, whereas a designation as a suit challenging a final agency action results in a different path to the federal courts.[8]

OPM's arguments fail because this case is not an enforcement action. Admittedly, Menoken's first cause of action states "that defendant has violated Title VII by repeatedly and deliberately failing to comply with EEOC Orders requiring that she [sic] 'cease' and correct discrimination against African American ALJ applicants." Am Compl. at 11. Menoken also seeks a "declaratory order finding EEOC's Orders legally binding on the defendant." *Id.* Nonetheless, Menoken's complaint is not limited to the enforcement of a final EEOC order or agency action. Not only does she seek assurances that the "partner at a large law firm" benchmark is no longer in use, but she also challenges other aspects of the ALJ selection and referral process held to be non-discriminatory by the EEOC, and requests relief beyond that granted by the administrative process.[9] Because Menoken's complaint goes well beyond the boundaries of AJ Jaffe's order, the court construes her complaint as a civil action pursuant to 42 U.S.C. § 2000e-16(c), not an enforcement action. *See Timmons v. White*, 314 F.3d 1229, 1332 (10th Cir. 2003) (finding that "complaint specifically requested more relief than the EEOC awarded," and was therefore not an enforcement action).

---

[8] For example, actions to enforce final agency determinations must comply with the requirements of 29 C.F.R. § 1614.504 or 29 C.F.R. § 1614.503. Actions challenging such a determination do not.

[9] Indeed, defendant acknowledges that plaintiff seeks relief beyond enforcement, stating that "Plaintiff seeks additional relief from this Court by asserting that OPM failed to provide her with proof of its compliance efforts and failed to rescore applicants on the register." Def. Mot. at 14.

9

Because this is not an enforcement action, OPM's contention that Menoken has failed to fulfill a condition precedent for this type of relief—an EEOC determination of non-compliance—is unavailing.

Further, OPM's erroneous categorization of plaintiff's complaint as an enforcement action also undermines its timeliness argument. Relying on 29 C.F.R. § 1614.407(d), OPM asserts that Menoken did not wait the requisite 180 days after her appeal to the EEOC to commence her case in federal court, and as such, her complaint is premature.[10]  It is 19 C.F.R. § 1614.407(c), however, that dictates the appropriate filing requirements. Compliance with section 1614.407(d)'s 180-day waiting requirement is necessary only in the absence of a final decision by the Commission. *See* 29 C.F.R. § 1614.407. When a final decision has been rendered, such as in the present action, the 90-day statute of limitations set forth in § 1614.407(c) is applicable.

On May 16, 2003, the EEOC issued a decision affirming the final agency order. The decision was mailed to Menoken on May 19, 2003 and, by operation of the EEOC's regulations, it is presumed to have been received on May 24, 2003. *See* Def's Ex. L. Menoken had 90 days from this date to commence a civil action, and 30 days to make a request that the EEOC reconsider its decision. On June 23, 2003, she timely filed her motion for reconsideration.

---

[10] In its entirety, 29 C.F.R. § 1614.407 states:

A complainant who has filed an individual complaint, an agent who has filed a class complaint or a claimant who has filed a claim for individual relief pursuant to a class complaint is authorized under title VII, the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court: (a) Within 90 days of receipt of the final action on an individual or class complaint if no appeal has been filed; (b) After 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken; (c) Within 90 days of receipt of the Commission's final decision on an appeal; or (d) After 180 days from the date of filing an appeal with the Commission if there has been no final decision by the Commission.

As OPM concedes, Menoken tolled the 90-day statute of limitation by filing her motion for reconsideration.[11] *See Nordell v. Heckler*, 749 F.2d 47, 49–50 (D.C. Cir. 1984) (holding that a timely motion for reconsideration tolls the period for filing a civil action). This statute of limitations was tolled until Menoken filed this action on August 21, 2003. Because the statute of limitations was tolled during the pendency of her motion for reconsideration, Menoken's complaint was filed well within the 90 day statute of limitations.

C. *Limited or Fragmented Trial de Novo*

Finally, OPM argues that Menoken's claims must be dismissed because Menoken allegedly seeks a limited or fragmented trial de novo of the AJ's findings. OPM's argument is without merit.

Title VII allows federal employees to challenge unfavorable agency determinations of their employment discrimination claims by filing a civil action. 42 U.S.C. § 2000e-16(c) ("An employee . . . , if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action [against] the head of the department, agency, or unit, as appropriate . . . ."). The Supreme Court has determined that aggrieved employees who choose to file a civil action have a right to a trial de novo. *Chandler v. Roudebush*, 425 U.S. 840, 862 (1976). It has also been established that "a plaintiff challenging . . . a final agency

---

[11] Menoken's motion for reconsideration rendered the May 16, 2003 EEOC decision "non-final." When a reconsideration request is timely filed, the EEOC's decision on appeal becomes "final" only when that appeal has been adjudicated. *See* 20 C.F.R. § 1614.405(b) (stating that an EEOC decision on appeal is final unless either party files a timely request for reconsideration). The May 16, 2003 decision became "final" on August 21, 2003 when plaintiff filed this civil action. Under the regulations promulgated by the EEOC, once a civil action is filed, any related administrative appeal is immediately dismissed. *See* 29 C.F.R. § 1614.409 ("Filing a civil action . . . shall terminate Commission processing of the appeal.").

11


determination on a Title VII claim must request a full trial de novo, allowing a district court to determine damages and liability on its own." *Herron v. Veneman*, 305 F. Supp. 2d 64, 76 (D.D.C. 2004) (citing *Timmons v. White*, 314 F.3d 1229, 1233 (10th Cir. 2003) (holding that "a plaintiff seeking relief under § 2000e-16(c) is not entitled to litigate those portions of an EEOC decision believed to be wrong, while at the same time binding the government on the issues resolved in his or her favor")).

OPM argues that Menoken seeks a limited or fragmented trial de novo because her amended complaint "incorporate[s] the administrative rulings of the EEOC AJ, including the finding that one benchmark had a disparate impact" and she "[seeks] to build on the favorable decisions she received in the administrative process in order to seek additional relief in this Court." *Id*. at 20. OPM misreads Menoken's complaint. While the complaint does discuss the AJ's decision finding that one benchmark in the ALJ examination process had an unlawful disparate impact, nowhere does it indicate an effort to have less than a de novo resolution of Menoken's claims. Morever, Menoken confirms that she seeks to litigate her claims in their entirety and de novo. Pl. Opp. at 10.

### III. CONCLUSION

For the aforementioned reasons, it is this 27th day of September, 2005, hereby

**ORDERED** that OPM's motion to dismiss or, in the alternative for summary judgment [Dkt. # 15], is **DENIED**.

                                              Henry H. Kennedy, Jr.
                                              United States District Judge