## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CASSANDRA M. MENOKEN, | |
| Plaintiff, | |
| v. | Civil Action 03-01775 (HHK) |
| KATHIE A. WHIPPLE, Acting Director, U.S. Office of Personnel Management, | |
| Defendant. | |

### MEMORANDUM OPINION

*Pro se* plaintiff Cassandra M. Menoken, a Black female attorney who is employed with the Equal Employment Opportunity Commission ("EEOC") is seeking to become a federal Administrative Law Judge ("ALJ").  Asserting disparate impact and disparate treatment claims, she brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"),  against the U.S. Office of Personnel Management ("OPM"), which administers the ALJ application process.  Menoken alleges that OPM failed to comply with an EEOC order requiring it to stop using a feature of the 1993 ALJ examination, which unlawfully discriminated against Black applicants.  Menoken further alleges that OPM's administration of the ALJ application process unlawfully discriminates against Black and female applicants in other ways. Finally, Menoken alleges that the ALJ application process discriminated against her in particular.

Before the court is OPM's "Renewed Motion for Summary Judgment" [#197].  Upon consideration of the motion, the opposition thereto, and the record of this case, the court concludes that OPM's motion must be granted.

# I. BACKGROUND

In 1993, Menoken commenced the OPM examination process.  An applicant must complete the process successfully to be eligible for selection as an ALJ.[1]  Dissatisfied with her final examination score, Menoken filed several appeals with the ALJ Ratings Appeal Panel.  In 1994, Menoken filed a formal charge with the EEOC alleging that the 1993 ALJ selection process had an unlawful disparate impact on Black and female applicants through its design and administration.  Menoken also alleged that OPM discriminated against her on the basis of her race and sex and retaliated against her because of her decision to engage in protected activity. After a hearing on the liability phase of her administrative charge, the EEOC Administrative Judge ("AJ") issued a decision finding all but one of her claims to be without merit.[2]

The claim on which Menoken prevailed was a challenge to the use of a benchmark in the SQS component of the ALJ examination.  Specifically, the benchmark awarded applicants who were partners at large law firms five out of a possible six points in the organizational skills category ("partner benchmark").  The AJ agreed with Menoken that using the partner benchmark as part of the SQS component impermissibly created a disparate impact on the basis of race. (Def.'s Renewed Mot. Summ. J., Ex. 8 at 61.)  On November 9, 2000, the AJ ordered OPM "to

---

[1] Applicants interested in being ALJs must participate in an extensive and highly-competitive examination process administered by OPM.  The exam has four components: (1) a Supplemental Qualifications Statement ("SQS"); (2) a written demonstration ("WD"); (3) a personal reference inquiry ("PRI"); and (4) a panel interview ("PI").  Upon completion of the exam, applicants receive a final numerical rating from 70 to 100, which is then adjusted for veteran's preference if applicable.  Those applicants with a qualifying final rating are placed on the ALJ Register to be referred to agencies to consider them for appointment to vacant ALJ positions.  Once eligible, applicants may designate one or more geographic areas in which they would accept an appointment.  Should an eligible candidate be offered an appointment within one of her designated areas, she is expected to accept it.  Indeed, OPM will remove a person from the ALJ Register if they twice decline an appointment within one of their designated geographic areas.

[2] Specifically, the AJ found: (1) use of the partner benchmark in the SQS created an unlawful disparate impact based on race; (2) apart from the partner benchmark in the SQS, the 1993 ALJ exam did not have a disparate impact on Black applicants; (3) the 1993 ALJ exam did not have a disparate impact on women; and (4) OPM did not engage in reprisal or intentional discrimination against Menoken.  (Def.'s Renewed Mot. for Summ. J., Ex. 8 at 61.)

cease use of that benchmark until its use has been properly validated . . . or until the disparate

impact disappears." (*Id.*)  The AJ also ordered OPM to post and provide notice to agencies of the

discriminatory benchmark and the AJ's order.  (Def.'s Renewed Mot. Summ. J., Ex. 9 at 27.)

OPM issued a final order stating it would implement the decision fully.  (Def.'s Reply to Pl.'s

Opp. to Def.'s Renewed Mot. Summ. J., Ex. 3 at 13-14.)  In August 2001, Menoken filed an

appeal with the EEOC, alleging that OPM had failed to comply with the AJ's order and, in

September 2001, she filed an appeal challenging the AJ's decisions on her other claims.  In May

2003, the EEOC issued a combined decision rejecting Menoken's compliance challenge and

affirming OPM's final agency decision.  (Def.'s Renewed Mot. Summ. J., Ex. 12 at 8.)  Menoken

filed a request for reconsideration of the EEOC's decision, which was still pending when she

filed this action in August 2003.

## II. ANALYSIS

Menoken's amended complaint sets forth three causes of action.  First, Menoken alleges

that OPM failed to comply with the AJ's order requiring it to cease and correct unlawful

discrimination against Black applicants caused by the partner benchmark.  Second, Menoken

alleges that the SQS and PRI components of the ALJ examination unlawfully discriminate

against Black applicants in general and against her in particular.  Third, Menoken alleges that the

geographic preference form used to identify where persons on the ALJ register are willing to

work unlawfully discriminates against female applicants in general and against her in particular.

OPM contends that it is entitled to summary judgment on all three claims.  OPM argues

that it is entitled to summary judgement with respect to the compliance claim because it

complied with the AJ's order and produced documentary and testimonial evidence confirming its

compliance.  OPM argues that it is entitled to summary judgment on Menoken's second and third

claims insofar as they allege disparate impact in the SQS, PRI, and geographic preference

components because Menoken has failed to establish a prima facie case of disparate impact.

OPM contends that it is entitled to summary judgment on Menoken's second and third claims

insofar as they allege disparate treatment against her because OPM has articulated legitimate,

non-discriminatory reasons for its actions; there is no evidence of pretext; and, in any event, there

is insufficient evidence of discrimination to survive summary judgment.

**A.      Menoken Has Not Produced Sufficient Evidence To Survive Summary Judgment
         On Her Compliance Claim.**

OPM contends that there is no evidence supporting Menoken's claim that OPM failed to

comply with the AJ's order requiring it to cease and correct discrimination against Black ALJ

applicants caused by the partner benchmark in the SQS component of the ALJ examination.

Indeed, OPM avers, without contradiction, that it provided Menoken with a memorandum, dated

August 24, 2001, explaining the numerous steps it had taken to comply with the AJ's order,

including: (1) ceasing use of or reliance upon the partner benchmark when scoring completed but

unscored ALJ applications; (2) reviewing the scores of applicants on the 1993 ALJ Register; and

(3) confirming that no applicants received five points on the basis of the SQS partner benchmark.

(*See* Def.'s Renewed Mot. Summ. J., Ex. 18 at 1-2.) ("Whitford Memo.")  To confirm its efforts,

OPM attached a list of the affected applicants to the Whitford Memo.  (*See id.* at 4.)  OPM also

points to the testimony of one of the two persons who were responsible for rating the SQS

component, F. Alan Nelson, who testified as follows:  that he crossed out the partner benchmark

while rating applications; that the other rater was provided with the modified ratings; and that

4

OPM did not resume use of the partner benchmark.  (Def.'s Reply to Pl.'s Opp. to Def.'s Renewed Mot. Summ. J., Ex. 4 at 26-30, 56-58.) ("Nelson Dep.")  Further, OPM states that it posted a notice to employees and applicants informing them that the partner benchmark no longer would be used.  (*See* Whitford Memo at 1-2.)  Finally, OPM contends that the EEOC found that OPM had complied with the AJ's order in rejecting Menoken's various appeals.

Menoken counters that this court cannot consider the Whitford Memo because it would be inadmissible at trial.  Specifically, Menoken contends that the Whitford Memo contains hearsay, lacks competency, lacks foundation, and has not been authenticated.  Further, Menoken contends that Nelson's testimony is insufficient to support summary judgment because a jury could question his credibility.  With respect to OPM's contention that the EEOC confirmed OPM's compliance by dismissing Menoken's appeals, Menoken simply states that the EEOC erroneously believed that OPM had complied with the AJ's order.

OPM rejoins that both documentary and testimonial evidence confirm its full compliance with the AJ's order, including not only the Whitford Memo but also Nelson's declaration, which explains that OPM stopped using the partner benchmark, that he personally crossed it out from the new rating schedule, that he provided the new rating schedule as amended to the other raters, and that OPM did not resume use of the partner benchmark.  (*See* Def.'s Renewed Mot. Summ. J., Ex. 3 at ¶¶ 10-12.) ("Nelson Decl.")  Further, OPM points out that it provided Menoken with a copy of the stricken language, (*see* Def.'s Renewed Mot. Summ. J., Ex. 19), which Nelson properly authenticated, (*see* Nelson Decl. at ¶ 11.).  With respect to the Whitford Memo, OPM contends that it is cumulative of other testimony and evidence, and, in any event, that Nelson properly authenticated it during his deposition.  (*See* Nelson Dep. at 88-89.)  With respect to

Nelson, OPM contends Menoken cannot rely on the argument that a jury must judge his credibility to defeat summary judgment because she has produced no evidence challenging Nelson's testimony or credibility.  Finally, OPM reiterates that previous EEOC decisions rejecting Menoken's appeals confirm OPM's above-described compliance efforts and thus support summary judgment for OPM.

OPM has provided abundant admissible evidence substantiating its full compliance with the AJ's order to cease and correct the discrimination caused by the partner benchmark. Menoken has not countered with sufficient evidence to create a genuine issue of material fact as to OPM's efforts toward compliance.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (holding that a motion for summary judgment that is supported by affidavits and other evidence "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'") (quoting Fed. R. Civ. P. 56(e)).  Menoken also has failed to provide a compelling legal basis in support of her claim; her arguments essentially boil down to the assertion that OPM has not complied with the AJ's order.  The record evidence plainly shows, however, that OPM has complied.  Accordingly, the court holds that OPM is entitled to summary judgment on Menoken's compliance claim.

**B.       Discrimination Claims**

Menoken raises both disparate impact and disparate treatment claims in her second and third causes of action.  OPM contends that it is entitled to summary judgment on both causes of action to the extent they raise disparate impact or disparate treatment claims.  The court agrees.

The Supreme Court has consistently recognized a distinction between discrimination claims based on disparate impact and discrimination claims based on disparate treatment. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003).  Disparate treatment is easier to understand because it arises in situations where an employer "simply treats some people less favorably than others *because of* their race, color, religion, sex, or [other protected characteristic]."  *Id*. (emphasis added) (internal quotation omitted).  Thus, "[l]iability in a disparate-treatment case 'depends on whether the protected trait . . . actually motivated the employer's decision.'"  *Id*. (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).  "By contrast, disparate-impact claims 'involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.'"  *Id*. (quoting *Teamsters v. United States*, 431 U.S. 324, 335-36 (1977)).  In a disparate-impact case, a court may find a facially neutral employment practice to be illegally discriminatory without any evidence of an employer's subjective intent to discriminate, which evidence is required in a disparate-treatment case.  *Id*. at 52-53 (citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 645-646 (1989).

**1.     Menoken Has Not Produced Sufficient Evidence To Survive Summary Judgment On Her Disparate Impact Discrimination Claim**.

The court analyzes a disparate impact case under a three-step, burden-shifting framework. *Anderson v. Zubieta*, 180 F.3d 329, 338-39 (D. C. Cir. 1999).  First, the plaintiff has the burden to establish a prima facie case.  *Id*. at 338 (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975)).  To establish a prima facie case, Menoken must show that the challenged components of the ALJ examination—SQS, PRI, and geographic preference form—although

facially neutral, have a significantly adverse impact on Black and/or female applicants.  *See*

*Connecticut v. Teal*, 457 U.S. 440, 446-47 (1982).  Plaintiffs typically make such a showing

through the submission of statistical evidence.  *See, e.g., Watson v. Fort Worth Bank & Trust*,

487 U.S. 977, 987 (1988).  If Menoken establishes a prima facie case, the burden shifts to OPM

to demonstrate either that the challenged employment practices do not cause a disparate impact

or that they are job-related and justified by business necessity.  *See Griggs v. Duke Power Co.*,

401 U.S. 424, 431 (1971).  In a case like this, where the challenged practice is an employment

examination, defendants typically can satisfy their burden by showing that the examination was

properly validated.  *See Albemarle Paper Co.*, 422 U.S. at 425.  Finally, if the defendant

demonstrates business necessity, plaintiffs must be given an opportunity to demonstrate that an

alternative employment practice could meet the employer's legitimate needs without a similar

discriminatory effect.  *See id.*; *see also* 42 U.S.C. § 2000e-2(k)(1)(A)(ii).

OPM contends that it is entitled to summary judgment on Menoken's second and third

causes of action insofar as they allege disparate impact discrimination because she has not carried

her burden to establish a prima facie case.  Specifically, OPM contends that apart from the AJ's

order concerning the partner benchmark in the SQS component (with which OPM complied),

Menoken produced no evidence of a disparate impact in the SQS, PRI, or geographic preference

form.[3]  Indeed, OPM contends that Menoken has no personal knowledge of a disparate impact

and cannot point to testimony, expert reports, or statistical analyses substantiating her claims.  In

response to Menoken's contention that OPM rated applicants based on their job titles and that

---

[3]  OPM acknowledges that the PRI form contained a partner benchmark.  PRI forms, however, were sent to applicant-designated references, and the benchmark was provided only as an example of a possible basis for awarding five points in organizational skills.

Black applicants, as a group, had job titles that would result in lower SQS scores than other applicants, OPM denies relying on job titles and contends that Menoken has provided no evidence that they did so.

Menoken counters that OPM has not made an affirmative showing that she cannot prove her claims or that it is entitled to judgment as a matter of law.  Menoken also contends that a reasonable jury could find in her favor.  With respect to her second cause of action regarding the SQS and PRI components, Menoken points out that OPM sent its responses to her requests for admission one day late, and, therefore, she asks the court to deem the following request for admission to be accepted as statistical evidence of adverse impact:  "ADMIT that the rate at which African Americans were appointed to ALJ positions, during the [relevant] period . . . was statistically significant at the .05 level of significance."[4]  (*See* Pl.'s Opp. to Def.'s Renewed Mot. Summ. J., Ex. 1 at ¶ 29.)  With respect to her third cause of action regarding the geographic preference form, Menoken purports to rely on the 1988 deposition of one "Pettibone," who testified that removing applicants from the ALJ Register if they twice declined an appointment in one of their designated geographic areas operated as a "built in headwind" against female applicants.[5]  Additionally, Menoken contends that she need not produce statistical evidence to support her claims, and, in any event, that she could not do so because OPM has destroyed the records necessary to do so.

OPM rejoins that Menoken's opposition, in essence, asks the court to shift the burden of persuasion from Menoken to OPM, requiring OPM to disprove a prima facie case of disparate

---

[4]  OPM appears to have finalized its responses on the day they were due but postmarked them the following day. That being the case, the court declines Menoken's request to deem her request for admission as admitted.

[5]  Even if the court considered Pettibone's statement, it is a matter of opinion; it is not a statement of fact.

impact rather than requiring Menoken to prove it.  According to OPM, the reason for Menoken's request is that she has produced no evidence supporting her claims—statistical or otherwise. Indeed, OPM contends that all Menoken can point to in support of her claims is conjecture, conclusory statements, and evidence outside the scope of discovery.  Accordingly, OPM reasserts that it is entitled to summary judgment on Menoken's second and third claims insofar as they allege disparate impact discrimination.

Despite a protracted—and highly-contested—period of discovery, Menoken fails to point to specific evidence from which a jury could find in her favor.  *See Celotex Corp.*, 477 U.S. at 324 (holding that a motion for summary judgment that is supported by affidavits and other evidence "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'") (quoting Fed. R. Civ. P. 56(e)).  Accordingly, summary judgment in favor of OPM is appropriate on Menoken's second and third claims insofar as they allege disparate impact discrimination.

### 2.  Menoken Has Not Produced Sufficient Evidence To Survive Summary Judgment On Her Disparate Treatment Discrimination Claim.

This court has long analyzed disparate treatment cases where direct evidence of discrimination is lacking under the three-step, burden-shifting framework announced by the Supreme Court in *In McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under *McDonnell Douglas*, the plaintiff first bears the burden of establishing a prima facie case of discrimination.  *Id*. at 802.  If the plaintiff carries that burden, the burden shifts to the employer to articulate a legitimate, non-discriminatory basis for its actions.  *Id*.  If the employer carries its

burden, the burden then shifts back to the plaintiff to prove that the employer's stated reason is a mere pretext for unlawful discrimination. *Id*. at 804.  The D.C. Circuit recently simplified this framework in *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008), holding:

> In a Title VII disparate-treatment suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*.  Rather, in considering an employer's motion for summary judgment or judgment as a matter of law in those circumstances, the district court must resolve one central question:  Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?

*Brady*, 520 F.3d at 494 (emphasis in original).

OPM contends that it is entitled to summary judgment on Menoken's second and third claims insofar as they allege disparate treatment discrimination.  OPM states that the SQS was necessary to evaluate applicants' experience and accomplishments and that applicants were not asked to identify themselves by race or gender.  Additionally, OPM avers that Menoken has produced no evidence in support of her claims and no evidence that OPM's action were pretextual.  Menoken does not set forth specific arguments with respect to her disparate treatment claims.  Rather, she relies on the same arguments that she raised and that the court rejected in Section II.B.1, *supra*.  Accordingly, the court's conclusion with respect to Menoken's disparate treatment claims is the same as it is with respect to her disparate impact claims:  Menoken has not adduced sufficient evidence of discrimination to survive summary judgment.[6]  *See Celotex Corp.*, 477 U.S. at 324.

---

[6]  It is unclear whether Menoken is raising disparate treatment claims with respect to the PRI and the geographic preference form.  To the extent that she is, the court holds that summary judgment in favor of OPM is appropriate for those claims as well.

### III.  CONCLUSION

For the foregoing reasons, it is this 23rd day of March 2009, hereby **ORDERED** that

defendant's motion for summary judgment [#197] is **GRANTED**.  An appropriate order

accompanies this Memorandum Opinion.


                                                Henry H. Kennedy, Jr.
                                                United States District Judge